UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD TIMBERLAND,<br><br>          Plaintiff,<br><br>     vs.<br><br>G. MASCARENAS, et al.,<br><br>          Defendants. | 1:16-cv-00922-GSA-PC<br><br>SCREENING ORDER<br><br>ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM, WITH LEAVE TO AMEND<br>(ECF No. 1.)<br><br>ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL<br><br>THIRTY-DAY DEADLINE TO FILE AMENDED COMPLAINT |

**I.     BACKGROUND**

Ronald Timberland ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis with this civil rights action filed pursuant to 42 U.S.C. §1983. Plaintiff filed the Complaint commencing this action on June 27, 2016. (ECF No. 1.) Plaintiff has consented to Magistrate Judge jurisdiction in this action. (ECF No. 5.)

Plaintiff's Complaint is now before the court for screening under 28 U.S.C. § 1915A.

**II.    SCREENING REQUIREMENT**

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

**III.   SUMMARY OF COMPLAINT**

Plaintiff is presently incarcerated at Corcoran State Prison (CSP) in Corcoran, California, where the events at issue allegedly occurred. Plaintiff names as defendants G. Mascarenas (Correctional Counselor I (CCI)), D. Patterson (CCI), J. Pierce (Institutional Gang Investigation (IGI) Officer), M. Cuevas (Sergeant), A. Maxfield (CCII), and M. Sexton (Chief Deputy Warden) (collectively "Defendants"), who were all employed at CSP at the time of the events at issue. Plaintiff's factual allegations follow.

On April 1, 2015, Plaintiff arrived at CSP to complete a determinate SHU[1] term of 48 months after being found guilty of a Rules Violation for conspiracy to murder a peace officer.

---

[1] Security Housing Unit

On May 1, 2015, in the morning, an unknown female staff member appeared at Plaintiff's cell door and started talking to him. Plaintiff could not hear what she was saying because of the noise of the big fans in the dayroom. Plaintiff thought she might be a psych tech making her daily rounds. Plaintiff yelled to her, "Hey, it's okay, I don't want to hurt myself or anyone else, you can go now." ECF No. 1 at 6 ¶13. This was the standard answer they want to hear. The woman looked at Plaintiff, obviously irate, said "Oh, yeah? We'll see about that, a**hole," and walked away. Id. Plaintiff does not know who she was but wonders if she was his assigned counselor, G. Mascarenas, who he has not met or seen since.

On May 5, 2015, Plaintiff's initial Institutional Classification Committee (ICC) hearing was held "in absentia," as Plaintiff had no prior notice or opportunity to attend in person. All of the Defendants attended the hearing, according to the Classification Committee Chrono dated April 29, 2015. Defendant Mascarenas was Plaintiff's assigned counselor during the meeting; Defendant Patterson was Plaintiff's assigned staff assistant during the meeting; Defendants Pierce and Cuevas were additional committee members present at the hearing; Defendant Maxfield was the recorder of the meeting; and defendant Sexton was the chairperson of the meeting.

On May 11, 2015, Officer Tabarez [not a defendant] slid an envelope under Plaintiff's cell door and said, "I think one of the counselors gave this to the guy in cell #10 last week sometime. At least he gave it back." ECF No. 1 at 7 ¶15. Plaintiff opened the envelope and read the document inside, realizing that it was a Classification Committee Chrono dated April 29, 2015. The document referred to an initial ICC hearing held on May 5, 2015, and contained personal information about Plaintiff's history.

The document contained many fraudulent statements that had apparently been entered into Plaintiff's case file. Because of the date of the document, Plaintiff thought it may have been generated before the May 5 hearing. Plaintiff realized that if the lies on the document about him were read by other inmates, especially by validated gang members or associates, Plaintiff would be at great risk of death. The document referred to Plaintiff's prior SNY (Sensitive Needs Yard) status, which the general population (GP) inmates refer to as PC's

(Protective Custody).  The SNY inmates are known to be child molesters, rapists, and snitches, all of whom are targeted for death.

Beginning on May 14, 2015, Plaintiff has been under a constant and escalating barrage of verbal and written threats of death by both GP and SNY inmates of all races.  Plaintiff has been spit on, speared by a homemade arrow, and suffered many attempts by other inmates to gas him (feces and urine mixed together and thrown at him).  These threats have caused Plaintiff to refuse yard time and showers.  Plaintiff knows this will not change for the remainder of his sentence, until 2044, and he expects to have to serve the remainder of his sentence housed in segregation.  There will also be a threat if Plaintiff takes a cell mate, as this would definitely be a kill-or-be-killed situation.  Plaintiff is deeply depressed, paranoid, exhausted, and stressed. He suffers from physical and mental anguish, thinks about taking his life, has lost his appetite, lost and gained weight, damaged his ligaments and tendons, had seizures, and suffers from stiffness in his back.  Plaintiff takes various prescribed medications for pain and mental stress, which cause unwanted side effects.  Plaintiff has related his feelings to administrative, custody, and mental health staff several times.

Plaintiff believes that Defendants' disregard of his safety has caused him to be targeted for death.  Plaintiff alleges that his counselor, defendant G. Mascarenas, filed fraudulent statements about Plaintiff during the May 5, 2015, hearing which Plaintiff was not allowed to attend.  Plaintiff also alleges that defendant Mascarenas gave Plaintiff's paperwork to another inmate, instructing this inmate to pass it around, knowing that the labelling of Plaintiff as a snitch caused Plaintiff to be under risk of serious harm.

Plaintiff alleges that defendant D. Patterson allowed the fraudulent information to be entered into the record without verifying the information.  Plaintiff also alleges that defendant Patterson failed to notify him of the date of the hearing and his rights to attend the hearing.

Plaintiff alleges that defendants J. Pierce, M. Cuevas, A. Maxfield, and M. Sexton failed to check the veracity of fraudulent information presented during the May 5, 2015, hearing and allowed it to be entered into Plaintiff's central file as fact.

///

Plaintiff requests monetary, declaratory, and injunctive relief. Plaintiff also requests appointment of counsel.

**IV.   PLAINTIFF'S CLAIMS**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional

harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.  Supervisory Liability and Personal Participation

Plaintiff has named defendants who hold supervisory positions. Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Therefore, Plaintiff fails to state any claims against Defendants in their supervisory capacity.

### B.  Failure to Protect – Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

///

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his or her future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that all of the Defendants placed his life in danger by their failure to check the veracity of fraudulent information about Plaintiff presented during the May 5, 2015, hearing, and by allowing the fraudulent information to be entered into Plaintiff's central file as factual. Plaintiff also alleges that defendant Mascarenas gave Plaintiff's information to another inmate, which has caused other prisoners to threaten Plaintiff with harm because of his prior status as a SNY inmate. SNY inmates are known to be child molesters, rapists, and snitches, all of whom are targeted for death.

Plaintiff fails to make factual allegations demonstrating that any of the Defendants personally acted against him while disregarding a serious threat to his safety. Plaintiff states that he believes that defendant Mascarenas gave Plaintiff's information to another inmate, which resulted in other inmates threatening him with death, but Plaintiff gives no facts to

support his beliefs. To succeed with this claim, Plaintiff must allege <u>facts</u> from which the court can infer that each of the Defendants, by their personal conduct, knew that Plaintiff faced a substantial risk of serious harm and yet proceeded to act with deliberate indifference to the risk. Plaintiff's facts must explain what Plaintiff saw, heard, or otherwise knew or experienced. Bare conclusory statements such as "Defendants placed my life in danger" or "Defendants allowed fraudulent information to be entered into my central file" are not sufficient without supporting <u>facts</u> describing what each named Defendant did, and facts showing that each Defendant acted while consciously disregarding the risk to his safety. Plaintiff also gives no <u>facts</u>, besides his own speculation, that Defendants' actions caused other inmates to threaten Plaintiff with harm. Plaintiff does not allege sufficient facts showing that his beliefs are more than speculation.

Therefore, Plaintiff fails to state a cognizable Eighth Amendment claim against any of the Defendants for failure to protect him from harm. Plaintiff shall be granted an opportunity to cure the deficiencies in this claim by filing an amended complaint.

### C.   **Due Process -- Classification Committee Hearing**

The Due Process Clause protects against the deprivation of liberty without due process of law. <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. <u>Id.</u> Liberty interests may arise from the Due Process Clause itself or from state law. <u>Id.</u>

Plaintiff alleges that he was not notified of the date of his classification hearing or informed that he could attend the hearing. However, Plaintiff has not alleged what happened at the hearing that caused him to be deprived of a liberty interest. Plaintiff gives no information about the decisions made or other results of the hearing that led to the violation of his constitutional rights.

In the event that Plaintiff was placed in segregation as a result of the hearing, Plaintiff is advised that the Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See <u>Hewitt v.</u>

1 Helms, 459 U.S. 460, 466-68 (1983); see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir.
2 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom
3 from state action taken within sentence imposed and administrative segregation falls within the
4 terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v.
5 Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was
6 within range of confinement normally expected by inmates in relation to ordinary incidents of
7 prison life and, therefore, plaintiff had no protected liberty interest in being free from
8 confinement in the SHU) (quotations omitted).

9 Under state law, the existence of a liberty interest created by prison regulations is
10 determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-
11 84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to
12 freedom from restraint which . . . imposes atypical and significant hardship on the inmate in
13 relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716,
14 718 (9th Cir. 2007). Here, Plaintiff has not shown that he suffered a deprivation which
15 imposed atypical and significant hardship on him. A plaintiff must assert a "dramatic
16 departure" from the standard conditions of confinement before due process concerns are
17 implicated. Sandin, 515 U.S. at 485–86; see also Keenan v. Hall, 83 F.3d 1083, 1088–89 (9th
18 Cir. 1996).

19 Plaintiff fails to establish the existence of a protected liberty interest of which he was
20 deprived. Therefore, Plaintiff fails to state a cognizable claim for violation of his rights to due
21 process based on the May 5, 2015, classification hearing.

22     **D.**     **False or Fraudulent Information**

23 Plaintiff alleges that Defendants entered fraudulent information on paperwork used at
24 the May 5, 2015 hearing. To the extent that Plaintiff seeks to bring a claim for violation of his
25 rights to due process for this reason, Plaintiff fails to state a claim.

26 There is no due process right to be free from false charges. The falsification of a
27 disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept.
28 of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v.

Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Accordingly, Plaintiff has no protected liberty interest in freedom from false claims against him. Therefore, Plaintiff fails to state a due process claim against any of the Defendants for entering false information in his file.

### E. Emotional Distress – Physical Injury Requirement

Plaintiff alleges that he suffered emotional distress because of Defendants' conduct. The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002) ) (back and leg pain and canker sore *de minimis*); see also Pierce v. County of Orange, 526 F.3d 1190, 1211-13 (9th Cir. 2008) (bladder infections and bed sores, which pose significant pain and health risks to paraplegics such as the plaintiff, were not *de minimis*). The physical injury requirement applies only to claims for mental or emotional injuries and does not bar claims for compensatory, nominal, or punitive damages. Id. at 630.

Plaintiff does not allege that he suffered physical injury caused by any of the Defendants. Therefore, Plaintiff may not be awarded relief in this case for mental or emotional injuries.

///

///

## V. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff requests court-appointed counsel. Plaintiff does not have a constitutional right to appointed counsel in this action, Rand v. Rowland, 113 F.3d 1520, 1525 (9th Cir. 1997), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1). Mallard v. United States District Court for the Southern District of Iowa, 490 U.S. 296, 298 (1989). However, in certain exceptional circumstances the court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). Rand, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success of the merits [and] the ability of the [plaintiff] to articulate his claims *pro se* in light of the complexity of the legal issues involved." Id. (internal quotation marks and citations omitted).

In the present case, the court does not find the required exceptional circumstances. At this early stage in the proceedings, the court cannot make a determination that Plaintiff is likely to succeed on the merits. By this order, Plaintiff's Complaint will be dismissed for failure to state a claim, with leave to amend. Thus, there shall be no complaint on record in this case for which the court has found cognizable claims. Moreover, a review of the record in this case shows that Plaintiff is able to articulate his claims and respond to the court's orders. Therefore, Plaintiff's motion for appointment of counsel shall be denied, without prejudice to renewal of the motion at a later stage of the proceedings.

## VI. CONCLUSION AND ORDER

The court finds that Plaintiff fails to state any cognizable claims in the Complaint upon which relief may be granted under § 1983. The court will dismiss this Complaint and give Plaintiff leave to file an amended complaint addressing the issues described above. The amended complaint should only name as defendants any individuals who directly caused Plaintiff harm, and Plaintiff should explain what each defendant knew and did or failed to do, resulting in the violation of Plaintiff's rights.

///

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." Accordingly, the court will provide Plaintiff with time to file an amended complaint curing the deficiencies identified above. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days.

The amended complaint must allege constitutional violations under the law as discussed above. Specifically, Plaintiff must state what each named defendant did that led to the deprivation of his constitutional or other federal rights. Fed. R. Civ. P. 8(a); Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. As discussed above, there is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676. Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights by their actions. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superceded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's motion for the appointment of counsel is denied, without prejudice;
2. Plaintiff's Complaint is dismissed for failure to state a claim, with leave to amend;
3. The Clerk's Office shall send Plaintiff a civil rights complaint form;

///

4. Plaintiff is granted leave to file a First Amended Complaint curing the deficiencies identified by the court in this order, within **thirty (30) days** from the date of service of this order;

5. Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:16-cv-00922-GSA-PC; and

6. If Plaintiff fails to file an amended complaint within 30 days, the court will dismiss this case for failure to state a claim.

IT IS SO ORDERED.

Dated:   **March 15, 2017**                    **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE