# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD TIMBERLAND,<br><br>  Plaintiff,<br><br>  vs.<br><br>G. MASCARENAS, et al.,<br><br>  Defendants. | 1:16-cv-00922-LJO-GSA-PC<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANT MASCARENAS FOR FAILURE TO PROTECT PLAINTIFF, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED FROM THIS CASE<br>(ECF No. 26.)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS |

## I.  BACKGROUND

Ronald Timberland ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action filed pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on June 27, 2016.  (ECF No. 1.)  On March 16, 2017, the court screened the Complaint pursuant to 28 U.S.C. § 1915A and dismissed the Complaint for failure to state a claim, with leave to amend.  (ECF No. 11.)  On April 17, 2017, Plaintiff filed a First Amended Complaint.  (ECF No. 14.)

The court screened the First Amended Complaint and entered findings and recommendations on February 27, 2018, recommending that this case be dismissed for failure to

1

state a claim, without leave to amend. (ECF No. 18.) On April 9, 2018, Plaintiff filed objections to the findings and recommendations, requesting leave to file a Second Amended Complaint. (ECF No. 23.) On May 22, 2018, the court vacated the findings and recommendations and granted Plaintiff leave to file a Second Amended Complaint. (ECF No. 25.) On June 20, 2018, Plaintiff filed the Second Amended Complaint, which is now before the court for screening. (ECF No. 26.)

## II. SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). While factual allegations are accepted as true, legal conclusions are not. Id. The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

///

## III. SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison in Delano, California. The events at issue in the Second Amended Complaint allegedly occurred at Corcoran State Prison (CSP) in Corcoran, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff names as defendants G. Mascarenas (Correctional Counselor I (CCI)), D. Patterson (CCI), A. Maxfield (CCII), and M. Sexton (Chief Deputy Warden) (collectively, "Defendants"), who were all employed at CSP at the time of the events at issue. Plaintiff's factual allegations follow.

### Background

On May 17, 2012, while at High Desert State Prison in Susanville, California, Plaintiff began serving a determinate Security Housing Unit (SHU) term of 48 months after being found guilty pursuant to a Rules Violation Report (RVR) for conspiracy to murder a peace officer. This RVR was based on information provided by a confidential informant.

On July 24, 2014, Plaintiff paroled to San Diego, California, having served his entire five-year sentence. Plaintiff's total SHU time served to that date was 26 months and 7 days.

On August 21, 2014, Plaintiff was returned to custody on new charges. While awaiting the outcome of these charges, Plaintiff was placed in the SHU as a Max Custody Inmate because he had paroled from the SHU. Plaintiff served another 6 months and 14 days in the SHU before being sentenced and returned to CDCR custody. Plaintiff's total SHU time served to that date was 32 months and 21 days.

Plaintiff returned to CDCR custody on March 5, 2015, at the California Institute for Men in Chino, California. Plaintiff was notified by the Prison Law Office in San Quentin, California that he was a member of "classes" in two cases, Coleman v. Brown, covering prisoners with mental health diagnoses, and Armstrong v. Brown, covering prisoners with physical disabilities under the ADA. Plaintiff was also notified that he qualified as a member of the Ashker v. Brown lawsuit, which brought to light the nefarious tactics used by the CDCR concerning SHU term sentences and releases, especially with regard to those prisoners who received SHU terms based

///

on information provided by confidential informants. Plaintiff was also notified of the proposed settlement agreement in the Ashker Litigation, in particular regarding determinate SHU terms: "All prisoners serving determinate SHU terms will serve 1/2 of the term specified. Parolees/violators returning to CDCR custody with new sentences shall not be returned to SHU to complete unexpired SHU term from previous prison term(s)." ECF No. 26 at 6 ¶M.

**Due Process -- Classification Committee Hearing**

On April 1, 2015, Plaintiff returned to CSP SHU, Facility 4B. On May 5, 2015, Defendants, Plaintiff's assigned counselor and committee members, held a hearing which resulted in Plaintiff being given another 26-month SHU term based on the RVR from 2012. As of the date of the hearing Plaintiff had served a total of 34 months and 21 days in the SHU. This was well over the "1/2 time" to be served per the Ashker Settlement Agreement. ECF No. 26 at 6 ¶N. As a result of this hearing, Plaintiff served an additional 23 months and 21 days in the SHU. Upon his release from the SHU Plaintiff had served a total of 58 months and 12 days for a 48-month SHU term. This "extra" SHU time lasted 10 months and 12 days beyond the original 48-month SHU term, for a total of 34 months and 12 days beyond the "1/2 time" that all other prisoners with SHU terms had served. ECF No. 26 at 7:7-11.

Plaintiff was deprived of privileges such as phone calls, contact and family visits, religious services, quarterly packages, work/job assignments, and education classes and programs, denying Plaintiff of the opportunity to earn a minimum of 30 weeks of "Milestone Credits," which would reduce his prison term. ECF No. 26 at 7:17. Plaintiff also suffered reduced yard access, reduced time spent out of his cell, and reduced medical services.

Defendant G. Mascarenas, Plaintiff's assigned counselor, did not provide any notice to Plaintiff of the May 5, 2015, Institutional Classification Committee hearing, either before or after the hearing. Defendant Mascarenas also failed to provide Plaintiff with any written notice of conduct reports or charges against him. Plaintiff was denied an opportunity to attend the hearing, submit any evidence, call witnesses, or offer any defense to the allegations against him. At the hearing, defendant Mascarenas presented committee members with many false statements,

///

allegations, and outright lies, which were entered in Plaintiff's Central File via the Classification Committee Chrono (128-G).

Defendant D. Patterson, Plaintiff's assigned staff assistant for the May 5, 2015 hearing, also failed to provide Plaintiff any notice of the hearing or charges against him, or assistance to Plaintiff to defend against charges. Defendant Patterson did not even meet with Plaintiff before or after the hearing.

**Due Process -- Inmate Appeals**

On June 2, 2015, Plaintiff filed inmate appeal log no. CSPC-6-15-03064, complaining about the actions of the committee members and defendant Mascarenas who gave Plaintiff's Classification Committee Chrono to another inmate with instructions to "pass this around," which placed Plaintiff in extreme danger from other inmates. ECF No. 26 at 12:5-6. Plaintiff requested that the false "facts" be removed from his C-file. ECF No. 26 at 12:19-20. Plaintiff also requested to be placed on permanent single-cell status and moved to the recently instituted Long Term Restricted Housing (LTRH) for those SHU inmates in the mental health program.

The actions of the committee members should have automatically warranted an investigation into staff misconduct, as mentioned in CDCR's Code of Regulations governing "Inmate Appeals - Levels of Review and Disposition." ECF No. 26 at 9-10.

On June 12, 2015, at the first level of review, defendant A. Maxfield partially granted Plaintiff's request to be moved to the LTRH Unit and denied the request for single-cell status. No mention of staff misconduct was made.

On July 6, 2015, at the second level of review, defendant M. Sexton again partially granted Plaintiff's request to be moved to the LTRH Unit and denied the request for single-cell status. No mention of staff misconduct was made. There was an acknowledgement of "several errors documented on the 128-G dated May 5, 2015." ECF No. 26 at 10:18-20.

As defendants Maxfield and Sexton were both members of the committee whose actions the appeal was about, neither should have reviewed this appeal at any level of review. Both defendants effectively blocked any investigation into staff misconduct by fellow committee

///

members. Despite the approval to be moved to the LTRH Unit rendered on June 12, 2015, Plaintiff was not actually moved until April 13, 2016.

**Failure to Protect**

On May 11, 2015, third watch floor officer M. Tabarez [not a defendant] slid an envelope under Plaintiff's cell door, stating, "Hey, the dude in cell #10 just gave this to me. He said a counselor gave it to him last week, at least he's giving it back." ECF No. 26 at 11:14-16. Upon opening the envelope and reading the enclosed document, Plaintiff realized that this was a 128-G committee chrono concerning a hearing which apparently occurred the previous week. The document contained many false statements about Plaintiff, particularly under the headings "Cell Review" and "Effective Communication." ECF No. 26 at 11:23-25.

On May 12, 2015, while outside in the recreation "cages," Plaintiff was able to question the inmate who resided in cell #10, known as "Baby Boy," a validated Crips gang member, and asked him about the 128-G form. ECF No. 26 at 11-12. Baby Boy stated, "Yeah, some female counselor gave that to me last week and told me to 'pass this around.' You shouldn't be working for the police and snitching on people." ECF No. 26 at 12:4-8. Plaintiff immediately realized that his status amongst the other inmates was in jeopardy, by the reaction from them. Many of them made comments about "snitches being dead meat." ECF No. 26 at 12:10-13.

Between May 5, 2015 and May 11, 2015, defendant Mascarenas did knowingly place Plaintiff's safety in jeopardy by giving the 128-G form, which contained many false "facts" about Plaintiff, to another inmate with instructions to "pass it around," effectively labeling Plaintiff a "snitch" or "rat" to other inmates. ECF No. 26 at 12:17-24.

For the remainder of the time that Plaintiff spent in the SHU, he was under a constant and escalating barrage of written and verbal threats of violence and death from inmates in both the General Population and Sensitive Needs Yard.

Plaintiff suffered physical injury on numerous occasions - being spit on; being gassed, the practice of throwing feces, urine, or a mixture of both, on him; being the target of homemade darts and arrows using blowguns and bows, these being dipped in feces and/or urine, designed to
///

cause illness and infection. On one occasion, a wheelchair-bound inmate squirted the contents of his colostomy bag on Plaintiff.

Plaintiff also suffered from anxiety, fear, nervousness, paranoia, deep depression, insomnia, weight loss and gain, loss of appetite, exhaustion, stress, suicidal thoughts, and various side effects from medications prescribed to help deal with these issues. Elavil, Triliptal, Clonadine, Levothyroxine, and Abilify are but a few of the medications prescribed to Plaintiff.

Upon Plaintiff's release from the SHU on April 26, 2017, he was informed that he could no longer be housed on any General Population yard due to confirmed death threats from other inmates. These threats used the information provided on the 128-G dated April 29, 2015, printed and given to another inmate by defendant G. Mascarenas. Plaintiff has received numerous death threats from SNY prison gangs, Northern Riders, Independent Riders, and USA Skins.

Plaintiff has received RVRs and suffered loss of credits and various privileges due to his refusal to accept a cell mate. Plaintiff has been moved/transferred five times since his release from the SHU. He is currently awaiting transfer to another prison due to safety/enemy concerns.

**Relief**

Plaintiff requests monetary damages, including punitive damages, and injunctive relief.

## IV. PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d

///

7

1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A. Due Process -- Classification Committee Hearing

The Due Process Clause protects against the deprivation of liberty without due process of law. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Id. Liberty interests may arise from the Due Process Clause itself or from state law. Id.

The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of the SHU. Resnick v. Hayes, 213 F.3d 443,

///

447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84, 115 S.Ct. 2293 (1995). Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484; Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Courts have found the existence of atypical and significant hardships in a very limited scope of cases. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 221–24 (2005) (holding inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); Serrano, 345 F.3d at 1078–79 (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to a liberty interest). While unusually long periods of segregation in violent, overcrowded or dangerous conditions may be sufficient to constitute a cognizable due process claim, Plaintiff makes no such specific allegations here regarding his confinement in the SHU. See Ramirez v. Galaza, 334 F.3d 850 (9th Cir. 2003) (noting without deciding that a two year period of segregation in a violent and overcrowded conditions while undergoing forced psychiatric evaluation may constitute "atypical and significant hardship"). "A liberty interest does not arise even when administrative segregation imposes severe hardships, such as denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for lengthy periods of time." Toussaint v. McCarthy, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted). Plaintiff does not have a liberty or property interest in a prison job. Sandin,

///

///

515 U.S. at 484; see Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985). It is settled law that prisoners have no absolute right to unfettered visitation. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996). Moreover, there is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)).

Plaintiff alleges that he was subject to a prolonged term in the SHU because his first term in the SHU, before he was paroled, was not properly considered when he was given a subsequent SHU term after he was returned to custody on new charges. Plaintiff also alleges that he was deprived of various privileges during his term in the SHU, such as phone calls, contact and family visits, religious services, quarterly packages, work/job assignments, education classes and programs, opportunities to earn good-time credits, yard access, time spent out of his cell, and some medical services.

Plaintiff's allegations do not reflect "atypical and significant hardship." See Sandin, 515 U.S. at 484, 115 S.Ct. 2293 (transfer to more restrictive conditions of confinement is not, by itself, sufficient to indicate atypical and significant hardship); Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (placement in Ad–Seg does not generally amount to atypical and significant hardship). Plaintiff's losses of privileges, although significant, are not atypical and do not rise to the level of hardships grave enough to state a cognizable due process claim.

Plaintiff's Second Amended Complaint fails to demonstrate that he had a liberty interest in freedom from the SHU, and therefore, he cannot state a due process claim based on his placement in the SHU.

### B. Enforcement of a Settlement Agreement

It appears that Plaintiff is attempting to enforce a settlement agreement from the case Ashker v. Brown regarding determinate SHU terms. The court is not in a position to intercede on Plaintiff's behalf in another court case. Moreover, unless the "parties' obligation to comply

///

with the terms of [a] settlement agreement [are] made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order," then "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381–82, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

To the extent Plaintiff is attempting to enforce the Ashker settlement agreement, this court does not appear to have jurisdiction. Plaintiff has not alleged any facts that would show an independent basis for enforcing a settlement agreement in Ashker v. Brown in federal court. A federal court has jurisdiction only if that court retained jurisdiction. Otherwise, Plaintiff must bring a claim for breach of contract in state court. A motion to enforce a settlement agreement essentially is an action to specifically enforce a contract.

Accordingly, any claim for enforcement of the settlement agreement in Ashker v. Brown must be dismissed.

### C. **Due Process – Inmate Appeals**

Plaintiff alleges that after he filed a prison appeal, committee members should have automatically investigated for staff misconduct, but they failed to do so. Plaintiff also contends that defendants Maxfield and Sexton improperly reviewed his appeal because they were both members of the committee whose actions the appeal was about.

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure." Ramirez, 334 F.3d at 860 (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley, 997 F.2d at 495; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner). "Hence, it does not give rise to a

protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." <u>Azeez</u>, 568 F. Supp. at 10; <u>Spencer v. Moore</u>, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Thus, the court finds that Plaintiff's allegations that defendants Maxfield and Sexton, or any other Defendant, failed to properly process Plaintiff's appeals fail to state a cognizable claim.

### D. <u>Failure to Protect – Eighth Amendment Claim</u>

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. <u>Id.</u> at 833; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005). The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff. <u>E.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Hearns</u>, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." <u>Farmer</u>, 511 U.S. at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his or her future health. <u>Id.</u> at 843 (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." <u>Farmer</u>, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." <u>Id.</u> at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." <u>Id.</u> at 834.

Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that defendant Mascarenas knowingly placed Plaintiff's safety in jeopardy by giving Plaintiff's 128-G form, which contained many false "facts" about Plaintiff, to another inmate with instructions to "pass it around," effectively labeling Plaintiff a "snitch" or "rat" to other inmates, causing other inmates to threaten Plaintiff with violence and death. ECF No. 26 at 12:17-24. Plaintiff alleges that he was spit on, gassed, and targeted with homemade darts and arrows dipped in feces and/or urine, designed to cause illness and infection.

The court finds that Plaintiff states a cognizable claim against defendant Mascarenas for failure to protect him under the Eighth Amendment. Assuming the truth of Plaintiff's allegations, Plaintiff was told by another inmate that "a female counselor" gave Plaintiff's confidential 128-G form, containing confidential personal information, to that inmate and told the inmate to "pass it around." Plaintiff identifies the female counselor as defendant Mascarenas and alleges that other inmates learned of the information contained on the 129-G form which labelled Plaintiff as a snitch, causing them to attack him by throwing urine and feces at him and threatening him with injury and death. Plaintiff alleges that upon his release from the SHU on April 26, 2017, he was informed that he could no longer be housed on any General Population yard due to confirmed death threats from other inmates using the information provided on the 128-G form. Plaintiff has alleged sufficient facts that, if proven before a jury, would demonstrate to a jury that he was genuinely at substantial risk of serious harm because defendant Mascarenas made the information on the 128-G form available to other inmates. These allegations are sufficient to state a cognizable claim.

Therefore, the court finds that Plaintiff states a cognizable Eighth Amendment claim against defendant Mascarenas for failure to protect him from harm.

///

## V. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff states a cognizable claim in the Second Amended Complaint upon which relief may be granted under § 1983, against defendant Mascarenas for failure to protect Plaintiff in violation of the Eighth Amendment, but no other claims against any of the Defendants. The court previously granted Plaintiff leave to amend the complaint, with ample guidance by the court. Plaintiff has now filed three complaints, stating only one cognizable claim. The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Therefore, based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. This case proceed with the Second Amended Complaint filed on June 20, 2018, against defendant D. Mascarenas for failure to protect Plaintiff, in violation of the Eighth Amendment;
2. All other claims and defendants be dismissed from this case for failure to state a claim upon which relief may be granted under § 1983;
3. Defendants D. Patterson (CCI), A. Maxfield (CCII), and M. Sexton (Chief Deputy Warden) be dismissed from this case for Plaintiff's failure to state any claims against them under § 1983;
4. Plaintiff's claims for due process concerning the May 5, 2015 Classification Committee hearing, due process based on the handling of prison appeals, and enforcement of the Ashker settlement agreement be dismissed from this case based on Plaintiff's failure to state a claim under § 1983; and
5. This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

    Dated:   **September 10, 2018**            **/s/ Gary S. Austin**
                                                                  UNITED STATES MAGISTRATE JUDGE